United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW R. PEREZ,<br><br>Plaintiff,<br><br>v.<br><br>E. MOORE, et al.,<br><br>Defendants. | Case No. 18-cv-04856-SI<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 16 |

In this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983, Matthew Perez claims that he was subjected to an unreasonable search of his body by the defendants in violation of his Fourth Amendment rights. Defendant Dr. Bass moves to dismiss the complaint with respect to his alleged involvement in the search of Perez. For the reasons below, the court will dismiss Perez's claims against Dr. Bass and grant leave to file an amended complaint.

## BACKGROUND

A. Plaintiff's Allegations

The complaint alleges the following:

On July 31, 2016, Matthew Perez was suspected of having obtained contraband from his girlfriend through a contact visit at Salinas Valley State Prison. After being placed on contraband watch for two days, Perez collapsed in the shower on the morning of August 2, 2019, allegedly because of the conditions of his contraband watch. Perez was taken to the correctional treatment center where he was given a shot of Narcan for a drug overdose, though Perez stated that his symptoms were not a result of an overdose. Perez was then transferred by ambulance to Natividad Medical Center, treated, and returned to Salinas Valley the next day.

On August 5, 2019, Perez refused investigative service unit (ISU) Lt. Moore's request to submit to x-rays at the correctional treatment center. Lt. Moore then told Perez that a search warrant would be obtained. At about 5:12 p.m. the same day, Perez was taken to Natividad Medical Center.

At Natividad for the second time, Perez was dragged by ISU Officers Peffley and Salgado into the emergency room and strapped to a gurney by the ISU Officers under the supervision of Lt. Moore. X-rays and CT-scans were then performed against Perez's wishes and sent to Dr. Jeffrey Bass for review. Docket No. 1 at 17-18.

About ten minutes later, Nurse Clement[1] attempted to give Perez an IV in his arm. The needle stick was painful, and it took her 3-4 attempts to succeed. Nurse Clement appeared to be indifferent to Perez's pain throughout the procedure, stating that she had heard Perez had "done a lot worse to [himself]." Docket No. 1 at 18.

About twenty-five minutes later, Dr. Bass talked to Lt. Moore and said that in the x-rays he saw "'five foreign bodies' in the plaintiff's 'anal cavity' that were 'unobstructed' and 'would be able to come out on [] their own.'" Docket No. 1 at 19:1-8. Dr. Bass refused the request of Lt. Moore to physically remove the objects due to medical risks, even though Lt. Moore said he had a search warrant that authorized the removal of the foreign bodies. Before he left, Dr. Bass prescribed a laxative to "let nature take its course" and the objects would "come out naturally." *Id.* at 20.

About fifteen minutes later, Nurse Clement entered the room with large containers of laxatives and began pouring the liquid into Perez's mouth, telling him he needed to continue drinking the laxative, cup by cup, until all the dose was gone. When he said he was not ready for more after the first cup, the nurse left and returned a few minutes later to administer another cup; this process was repeated at least seven times in ten minutes. Eventually, Perez said he could drink no more without throwing up. When the nurse left, the sleep-deprived Perez tried to close his eyes, but ISU Officer Peffley yelled at him to keep him awake.

Nurse Clement returned to see what the noise was about and gave the laxative to ISU Officer Peffley to administer to Perez. ISU Officer Peffley then "began forcibly pouring the laxative into

---

[1] Nurse Clement was originally referred to as "Nurse Jane Doe, SBC." Perez later identified her as Nurse Clement. *See* Docket No. 11.

the plaintiff's mouth until the plaintiff began coughing and choking on the liquid." Peffley did this 6-7 times. Docket No. 1 at 22.

In the early morning hours of August 6, 2019, Lt. Moore advised his officers that the hospital was not going to admit Perez overnight and that he would need to be taken back to Salinas Valley. Lt. Moore also learned, however, that the chief medical officer at Salinas Valley would not allow Perez back to the prison in his current condition. Lt. Moore then spoke with Nurse Clement.

After speaking with Lt. Moore, Nurse Clement came into Perez's room and told Perez that she would administer enemas to him. Perez protested and requested to call the doctor, but Nurse Clement refused. ISU Officers Salgado and Peffley then grabbed Perez, pulled off his clothes, and bent him over the table while Nurse Clement administered enemas without lubrication. This tore Perez's anus and caused it to bleed. The enemas and subsequent bowel movements were performed in front of a room full of officers, some female. Once it was determined that Perez was "contraband free," he was returned to Salinas Valley. Docket No. 1 at 24:2-3.

B. Positions of the Parties

Dr. Bass now moves for dismissal of the complaint against him. Docket No. 16. He first notes that there is no allegation that he was a government employee and states that he is a private party whose medical group had a contract to provide emergency room care to patients at Natividad. Dr. Bass then argues that, regardless of whether he is deemed to have been a state actor, he has no Fourth Amendment liability because he did not act with the intent to aid in the search of Perez. Rather, his motivation was to provide Perez with proper medical care. Furthermore, Dr. Bass states that the administration of an enema to Perez "had nothing to do with Dr. Bass," and he should not be held liable for Nurse Clement's actions. *Id*.

Perez opposes this motion to dismiss. He argues that if allowed time for discovery, he might find information connecting Dr. Bass to the administration of the enema by Nurse Clement. Docket No. 26.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted." A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). The court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010). The court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended,* 275 F.3d 1187 (9th Cir. 2001). In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

**DISCUSSION**

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. The analysis of an allegedly unreasonable search is similar for both private actors and non-law enforcement governmental officials. *United States v. Attson*, 900 F.2d 1427, 1432 (9th Cir. 1990). In both instances, the Fourth Amendment will apply only if (1) the government had knowledge of and acquiesced to the conduct and (2) the party performing the search intended to assist the government. *Id.* As the first prong is not at issue in the pending motion, Dr. Bass's liability turns on his alleged intent and purpose. If Dr. Bass acted with the intent of assisting the government in their investigatory or administrative activities and had no independent purpose, his actions could be considered a search that would fall under the Fourth Amendment.

A. <u>Dr. Bass's Intentions for Mr. Perez's Treatments and Procedures</u>

One potential independent purpose for treating Perez would be a medical purpose. If an invasive procedure is performed for a medical purpose, it is not considered a search or a seizure

4

under the Fourth Amendment. *United States v. Chukwubike*, 956 F.2d 209, 212 (9th Cir. 1992) (*citing Attson*, 900 F.2d at 1433). In *Chukwubike*, the defendant—a suspected drug mule—was detained at the airport by customs officials and transferred to a nearby hospital where he collapsed and was given Narcan for a suspected drug overdose. *Id*. The doctor x-rayed the defendant, discovered more than fifty balloons in his gastrointestinal tract, and performed numerous invasive procedures to remove the balloons, which were filled with heroin. *Id*. The court concluded that all procedures performed by the doctor on the defendant were for medical reasons and not to assist law enforcement officials. *Id*. at 212. Therefore, the procedures, though invasive, were not searches under the Fourth Amendment. *Id*; *see also Attson*, 900 F.2d at 1432-33 (although doctor was a government employee, his drawing of blood from defendant was for medical reasons rather than investigative purposes, and therefore the Fourth Amendment did not apply).

Dr. Bass argues that based on the allegations in the complaint, he did not have the intent to assist the government's search of Perez's body for contraband. Docket No. 16 at 8. Dr. Bass highlights the allegations that he reviewed the x-rays and CT-scans, concluded that there were five unobstructed foreign bodies in Perez's person, and prescribed a laxative to remove these bodies. Docket No. 1 at 19. Dr. Bass also points out that the complaint alleged that he "continually refused" to physically remove the foreign bodies because of concerns for Perez's safety even after being told of the search warrant supposedly permitting the extraction of foreign bodies. *Id*.

In his complaint, Perez does not allege that Dr. Bass intended to assist the ISU Officers in the search of Perez's body. Though Perez does allege that Dr. Bass prescribed him laxatives, he does not allege that in doing so Dr. Bass acted for an investigative rather than medical purpose. Leave to amend is granted so that Perez may allege facts, if he has them, that plausibly state a claim that Dr. Bass acted with intent to assist the government agents in their search.

B. <u>Dr. Bass's Liability For the Procedures Allegedly Performed by Nurse Clement and the other ISU Officers</u>

In § 1983 cases the traditional doctrine of *respondeat superior* does not apply. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018). Instead, the plaintiff must allege facts showing that

the supervisor was either (1) personally involved in the constitutional violation or (2) sufficiently causally connected to the constitutional violation through the supervisor's own wrongdoing. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). There are two ways to show that a sufficient causal connection existed: (1) by showing that the supervisor set in motion a series of acts by others that culminated in the constitutional violation or (2) by showing that the supervisor knowingly refused to terminate the acts by others, which the supervisor knew or reasonably should have known would result in a constitutional violation. *Id*. at 1207-08. The result is that the supervisor is not vicariously liable for the actions of her subordinates; instead, the supervisor can be personally liable for her own action or inaction in the "training, supervision, or control of [her] subordinates" or for her "reckless or callous indifference to the rights of others." *Rodriguez v. County of L.A.*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018)).

Dr. Bass urges that he should not have supervisory liability because he was not present for either the administration of the laxatives or the enema on Perez. Docket No. 16 at 6-7. This alone has no bearing on whether or not Dr. Bass can be held liable for these events. A supervisor does not have to be present during the actual constitutional violation to be held liable for such violation. Holding otherwise would effectively allow supervisors to avoid liability by simply stepping out of the room.

Nonetheless, Dr. Bass correctly states that Perez does not allege in his complaint that Dr. Bass had a causal connection to any of the physically intrusive procedures performed on Perez by Nurse Clement and the correctional officers. Docket No. at 7. Perez alleges that Dr. Bass failed in his "official capacity as attending physician" to "prevent Nurse [Clement] from performing a procedure that risked the Plaintiff's life." Docket No. 1 at 27. However, Perez does not allege that Dr. Bass set in motion or knowingly refused to stop Nurse Clement's actions, which Dr. Bass either knew or should have reasonably known would result in a constitutional violation. *See Starr*, 652 F.3d at 1207-08. Without plausible allegations showing Dr. Bass's intent, a claim is not stated on this theory.

In his opposition brief, Perez suggests that Dr. Bass gave orders to Nurse Clement to perform an enema on Perez at a later point in time and speculates that Perez might learn during discovery

that Dr. Bass was involved. Docket No. 26 at 15:7-9 ("Unless Nurse [Clement] acted on her own accord, she was executing orders and/or instructions she received from her supervisor."). But Perez does not allege any facts plausibly suggesting that Dr. Bass had any causal connection to either the performance of an enema on Perez or the specific methods Nurse Clement used to administer the laxative. Indeed, the allegations of the complaint suggest Dr. Bass was not involved in either of these decisions, as Perez alleges both that Dr. Bass refused officers' requests to physically remove the foreign bodies and that Nurse Clement refused Perez's request to call the doctor prior to and during her administration of the enema. As a result, the complaint does not allege supervisory liability for Dr. Bass regarding any alleged constitutional violations by Nurse Clement or the ISU officers.

## CONCLUSION

Dr. Bass's motion to dismiss is GRANTED. Docket No. 16. Leave to file an amended complaint is GRANTED. Perez must file an amended complaint that complies with the directions in this order no later than **October 4, 2019,** and must include the caption and civil case number used in the order and the words AMENDED COMPLAINT on the first page. Perez is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled."). Failure to file the amended complaint by the deadline will result in the dismissal of all claims against Dr. Bass.

**IT IS SO ORDERED**.

Dated: August 30, 2019

SUSAN ILLSTON
United States District Judge