UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW R. PEREZ, <br> Plaintiff, <br> v. <br> E. MOORE, et al., <br> Defendants. | Case No. 18-cv-04856-SI <br><br> **ORDER DISMISSING DEFENDANT BASS** <br> Re: Dkt. No. 38 |

In this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983, Matthew Perez claims that he was subjected to an unreasonable search of his body by the defendants in violation of his Fourth Amendment rights. Defendant Dr. Bass moved to dismiss the complaint with respect to his alleged involvement in the search of Perez. The Court granted the motion to amend and required Perez to file an amended complaint. Perez then filed an amended complaint. Dr. Bass now moves to dismiss the amended complaint against him. For the reasons below, the Court will dismiss Perez's claims against Dr. Bass.

**BACKGROUND**

The amended complaint alleges the following:

On July 31, 2016, Matthew Perez was suspected of having obtained contraband from his girlfriend through a contact visit at Salinas Valley State Prison. After being placed on contraband watch for two days, Perez collapsed in the shower on the morning of August 2, 2019, allegedly because of the conditions of his contraband watch. Perez was taken to the correctional treatment center where he was given a shot of Narcan for a drug overdose, though Perez stated that his symptoms were not a result of an overdose. Perez was then transferred by ambulance to Natividad

Medical Center, treated, and returned to Salinas Valley the next day. Docket No. 36 at 11-25.

On August 5, 2019, Perez refused investigative service unit (ISU) Lt. Moore's request to submit to x-rays at the prison's correctional treatment center. Lt. Moore then told Perez that a search warrant would be obtained. *Id.* at 25-26.

The Court takes judicial notice that a search warrant was issued by the Monterey County Superior Court.[1] Docket No. 40-7 at 13-18. The affidavit of probable cause for the warrant described the facts, including the observed ingestion of contraband by Perez as well as the efforts that had not yet yielded the contraband. *Id.* at 15-18. The affidavit proposed that the search be done at a hospital, where a

> body cavity search will be conducted in a medically approved manner by a licensed physician or other licensed medical professional. Said person(s) are authorized by this court to conduct a body cavity search of the above listed person without their consent. Said search does not include surgical procedures accomplished with scalpels, but is rather a probing type of search. [] The term body cavity within the meaning of this warrant shall constitute the mouth, digestive tract, and or anus of inmate Perez.

*Id*. at 17-18 (errors in source; brackets added). The search warrant, signed by a Monterey County Superior Court judge on August 5, authorized a search of Perez and described the property to be seized as "[a]ny foreign objects to include methamphetamine, heroin, any other controlled substances and prescription medication  Any item deemed by qualified medical staff as being a foreign object located inside Inmate Perez' body shall be relinquished to a representative of the Salinas Valley State Prison Investigative Services Unit." *Id.* at 14.

At about 5:12 p.m. the same day, Perez was taken to Natividad Medical Center. Docket No. 36 at 26. At Natividad for the second time, Perez was dragged by ISU Officers Peffley and Salgado into the emergency room and strapped to a gurney by the ISU Officers under the supervision of Lt. Moore. *Id.* Perez was "physically made to submit to 'x-rays' and 'CT-scans' and then taken to an emergency room to await the results and doctor consultation. *Id.* at 26-27. Nurse Clement put an

---

[1] In reviewing the amended complaint, the Court may consider facts that are subject to judicial notice, even if they are not alleged in the amended complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (discussing Rule 12(b)(6) standards). The Court may take judicial notice of matters of public record, such as its own files and those of other courts. *See id.;* Fed. R. Evid. 201.

IV in Perez's arm, although it took her 3-4 painful attempts to succeed. *Id.* at 27. Nurse Clement appeared to be indifferent to Perez's pain throughout the procedure, stating that she had heard Perez had "done a lot worse to [himself]." *Id.*

About 25 minutes later, Dr. Bass appeared and talked to lieutenant Moore about the x-ray and CT-scan results, explaining that five foreign bodies were visible in Perez's anal canal that were unobstructed and could come out on their own. *Id.* at 29. Lieutenant Moore argued with Dr. Bass, saying that he had a search warrant and wanted Dr. Bass to "physically remove these objects with intrusion into the plaintiff. The doctor refused to perform any type of physical intrusion due to the inherent risk of death" if the foreign bodies were perforated and contained drugs. *Id.* The doctor "refused to perform any type of physical intrusion procedure," and this stance irritated lieutenant Moore. *Id.* Lieutenant Moore referred again to the search warrant that authorized the retrieval of any item deemed to be a foreign body by qualified medical staff. *Id.* Dr. Bass responded that he would not allow Perez to be subjected to a procedure that jeopardized his well-being; Dr. Bass said he would prescribe "'laxatives and we will let nature take its course.'" *Id.* at 30.

About fifteen minutes later, Nurse Clement entered the room with large containers of laxatives and began pouring the liquid into Perez's mouth, telling him he needed to continue drinking the laxative, cup by cup, until all the dose was gone. *Id.* at 30. At the time, Perez could not drink on his own because he was restrained, handcuffed and had his hands covered. *See id.* When Perez said he was not ready for more after the first cup, the nurse left and returned a few minutes later to administer another cup; this process was repeated at least seven times in ten minutes. *Id.* at 30-32. Eventually, Perez said he could drink no more without throwing up. *Id.* at 32. Nurse Clement commented that stalling would not work, and left the room. *Id.* When she left, the sleep-deprived Perez tried to close his eyes, but ISU Officer Peffley yelled at him to keep him awake. *Id.*

Nurse Clement returned to see what the noise was about and gave the laxative to ISU Officer Peffley to administer to Perez. *Id.* at 33. ISU Officer Peffley then "began forcibly pouring the laxative into the plaintiff's mouth until the plaintiff began coughing and choking on the liquid." *Id.* Peffley did this 6-7 times. *Id.* Dr. Bass and Nurse Clement did not check on Perez during this time. *Id.*

3

In the early morning hours of August 6, 2019, Lt. Moore advised his officers that the hospital was not going to admit Perez overnight and that he would need to be taken back to Salinas Valley. *Id.* at 33-35. Lt. Moore also learned, however, that the chief medical officer at Salinas Valley would not allow Perez back to the prison in his current condition. *Id.* at 35. Lt. Moore then spoke with Nurse Clement. *Id.*

After speaking with Lt. Moore, Nurse Clement came into Perez's room and told Perez that she would administer enemas to him. *Id.* Perez protested and wanted the doctor to be called, but Nurse Clement refused. *Id.* ISU Officers Salgado and Peffley then grabbed Perez, pulled off his clothes, and bent him over the table while Nurse Clement administered enemas without lubrication. *Id.* This tore Perez's anus and caused it to bleed. *Id.* The enemas and subsequent bowel movements were performed in front of a room full of officers, some female. *Id.* at 35-36. Once it was determined that Perez was "contraband free," he was returned to Salinas Valley. *Id.* at 36.

The Court takes judicial notice that Perez suffered a conviction for possession of controlled substances in prison, for which he received a prison sentence totaling two years (i.e., one year for the drug possession, doubled because he had suffered a prior conviction). Docket No. 40-12 at 4 (abstract of judgment).

In an effort to cure deficiencies mentioned in the order of dismissal with leave to amend, the amended complaint alleged that Dr. Bass and Nurse Clement "remained in contact [sic] communication throughout Dr. Bass' initial examine of plaintiff's diagnosis to his ordering prescribing the medications administered by Nurse Clement to forcibly induce plaintiff's bodily functions to react to the medications, including but not limited to, the administration of enema prescribed by defendant Bass to Plaintiff by defendant Clement." Docket No. 36 at 27. Later, however, the amended complaint alleges that Nurse Clement's "physically intrusive procedure" "defied the medical doctor Jeffrey H. Bass M.D. orders and refusal to perform any type of physical intrusion" due to the risk of death. *Id.* at 39. The amended complaint also alleges that Dr. Bass, as attending physician, "failed in his responsibilities to administer or prevent nurse Sunni B. Clement from performing a procedure that risked" Perez's life and allowed officer Peffley to administer the laxative due to a lack of oversight. *Id.* at 40.

4

Attached to the amended complaint is an "ED provider report" from Natividad Medical Center. Docket No. 36-1. The "initial comments" stated that (1) the patient was brought in after having been seen ingesting bags thought to contain methamphetamine; (2) the patient had not eaten anything for two days, was drinking minimal amounts of fluids, had nausea without vomiting, and felt weak; and (3) the search warrant had been seen by the doctor. *Id.* The test-results portion of the report states that the x-ray showed "dilated loops of bowel possibly consistent with ileus versus partial obstruction. I did not see any obvious foreign bodies." *Id.* at 6. The CT-scan showed "5 small cylindrical foreign bodies in the distal sigmoid/rectum," without evidence of obstruction. *Id.* at 12. The report also stated that there was a "transfer of care" of Perez from one doctor to another doctor, although the point in time which this happened is not clear on the record: a Dr. Laico "received signout on this patient from Dr. Bass." *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted." A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). The Court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010). The Court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended,* 275 F.3d 1187 (9th Cir. 2001). In considering a motion to dismiss, the Court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

**DISCUSSION**

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. The analysis of an allegedly unreasonable search is similar for both private actors and non-law enforcement governmental officials. *United States v. Attson*, 900 F.2d 1427, 1432 (9th Cir. 1990). In both instances, the Fourth Amendment will apply only if (1) the government had knowledge of and acquiesced to the conduct and (2) the party performing the search intended to assist the government. *Id.* As the first prong is not at issue in the pending motion, Dr. Bass's liability turns on his alleged intent and purpose. If Dr. Bass acted with the intent of assisting the government in their investigatory or administrative activities and had no independent purpose, his actions could be considered a search that would fall under the Fourth Amendment.

A.  Earlier Rulings On The *Original* Complaint

In reviewing the *original* complaint in response to Dr. Bass' first motion to dismiss, the Court explained that an invasive procedure performed for a medical purpose is not considered a search or a seizure under the Fourth Amendment. Docket No. 30 at 3-4 (citing *United States v. Chukwubike*, 956 F.2d 209, 212 (9th Cir. 1992) (doctors' warrantless intrusive procedures, including digital removal of objects and abdominal surgery, done on drug mule brought in by law enforcement officials were for medical reasons and not to assist law enforcement officials, and therefore were not searches under the Fourth Amendment), and *United States v. Attson*, 900 F.2d 1427, 1432 (9th. Cir. 1990) (Fourth Amendment did not apply because, although doctor was a government employee, his drawing of blood from defendant was for medical reasons rather than investigative purposes)). Here, the Court determined that "Perez does not allege that Dr. Bass intended to assist the ISU Officers in the search of Perez's body. Though Perez does allege that Dr. Bass prescribed him laxatives, he does not allege that in doing so Dr. Bass acted for an investigative rather than medical purpose." Docket No. 30 at 4. The Court granted leave to amend "so that Perez may allege facts, if he has them, that plausibly state a claim that Dr. Bass acted with intent to assist the government agents in their search." *Id.*

The Court also determined that the *original* complaint did not state a claim against Dr. Bass based on the procedures allegedly performed by Nurse Clement and the ISU officers. *Id.* The Court explained that respondeat superior liability does not exist under section 1983 and that a person in a supervisory position has liability only if the supervisor was either (1) personally involved in the constitutional violation or (2) sufficiently causally connected to the constitutional violation through the supervisor's own wrongdoing. Docket No. 30 at 5-6 (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). The Court determined that the original complaint did not state a claim against Dr. Bass for supervisory liability. *Id.* at 6. Although it was not necessary for Dr. Bass to be physically present to be liable, the complaint did not adequately allege a causal connection to the alleged wrongdoing of Nurse Clement and the correctional officers. *Id.* In his original complaint, Perez had not alleged any facts plausibly suggesting that Dr. Bass had any causal connection to either the performance of an enema on Perez or the specific methods Nurse Clement used to administer the laxative.

### B. Evaluating The Motion To Dismiss The Amended Complaint

Perez's amended complaint mostly repeats the allegations of the original complaint and adds an "information and belief" paragraph that Dr. Bass and Nurse Clement remained in constant communication either up until Dr. Bass prescribed the medications, or throughout the visit – the amended complaint has a convoluted sentence[2] that may mean one or the other. Docket No. 36 at 27. The Court will assume for present purposes that it is the broader allegation, i.e., that Dr. Bass and Nurse Clement remained in constant communication throughout Perez's visit to the hospital. This new paragraph does not state a plausible claim for relief against Dr. Bass as a supervisor. Other allegations in the verified amended complaint contradict this allegation – and the other allegations are not made on information and belief. These other allegations indicate that Nurse Clement was

---

[2] Perez alleges: "Plaintiff is informed and believes based on information and belief and thus alleges that Defendants Doctor Bass and Nurse Clement remained in contact communication throughout Dr. Bass' initial examine of plaintiff's diagnosis to his ordering prescribing the medications administered by Nurse Clement to forcibly induce Plaintiff's bodily functions to react to the medications, including but not limited to, the administration of enema prescribed by defendant Bass to Plaintiff by defendant Clement, as alleged herein." Docket No. 36 at 27.

7

not in communication with Dr. Bass during the administration of the enema. Specifically, the amended complaint alleges that Perez asked Nurse Clement to get the doctor and Nurse Clement refused to do so. Docket No. 36 at 35. Perez alleges that, when he told Clement that the doctor refused to perform any type of physical intrusion because of the risk of harm, Nurse Clement allegedly brushed off Perez's initial complaint and said they didn't have time to let nature take its course. *Id.* When he then said "'call the doctor!'" after Nurse Clement said she would perform an enema on him, Clement "responded 'Not gonna happen'" and commenced with the procedure. *Id.* The amended complaint also alleges that Nurse Clement's "physically intrusive procedure" "defied the medical doctor Jeffrey H. Bass M.D. orders and refusal to perform any type of physical intrusion" due to the risk of death. *Id.* at 39. The amended complaint indicates that Perez did not see Dr. Bass again after Dr. Bass considered the imaging results and ordered laxatives. There are simply no allegations that Dr. Bass knew or should have known about the particular manner in which Nurse Clement administered the laxatives and enema, but failed to stop her from administering them in a manner which was unconsitutitonal.

The amended complaint does not allege personal involvement in the constitutional violation or a sufficient causal connection to the alleged constitutional violation through Dr. Bass' own wrongdoing. *See Starr v. Baca,* 652 F.3d at 1207. The amended complaint does not allege facts plausibly suggesting that Dr. Bass "set in motion a series of acts by others," or "knowingly refus[ed] to terminate a series of acts by others," which Dr. Bass "knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08. The amended complaint is nothing more than an effort to hold Dr. Bass liable on a theory of respondeat superior for the alleged excesses of Nurse Clement. *See Felarca v. Birgenau*, 891 F.3d 809, 820 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207–08). Thus, the amended complaint does not state a plausible claim against Dr. Bass with regard to the manner in which Nurse Clement administered the laxatives and enema or with regard to the alleged assistance to the nurse provided by the ISU officers.

Finally, even if one assumes for purposes of argument that Dr. Bass ordered the x-rays, CT-scan, laxatives, and enema, for the purpose of assisting the ISU officers with a law enforcement investigative purpose rather than for medical reasons, a plausible claim for relief is not stated. Dr.

8

Bass was acting pursuant to a facially valid warrant signed by a neutral judicial officer that authorized the search for contraband in Perez's body. The affidavit of probable cause explained the intent to do a much more intrusive search (i.e., a "probing type of search") and the warrant authorized a search of Perez's body for foreign objects including drugs. Docket No. 40-7. A search conducted in good faith reliance on a facially valid warrant is constitutional as long as the reliance on the magistrate judge's determination that probable cause existed was objectively reasonable, the magistrate judge did not wholly abandon his judicial role, and the officers did not act in bad faith by misleading the magistrate judge. *See United States v. Huggins*, 299 F.3d 1039, 1043-44 (9th Cir. 2002) (citations omitted). Perez does not allege that there was any deficit in the search warrant shown to Dr. Bass. The amended complaint fails to state a claim against Dr. Bass for a Fourth Amendment violation.

## CONCLUSION

Dr. Bass's motion to dismiss is GRANTED. Docket No. 38. The amended complaint fails to state a claim against Dr. Bass. Further leave to amend is not granted because it would be futile: the Court already provided directions as to what Perez needed to allege to state a claim and he was unwilling or unable to do so in his amended complaint. Dr. Bass is now dismissed from this action.

**IT IS SO ORDERED**.

Dated: April 14, 2020

SUSAN ILLSTON
United States District Judge